UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
 :
MARIA LETTMAN, :
                          Plaintiff, :
 : 12 Civ. 6696 (LGS)
        -against- :
 : ORDER & OPINION
UNITED STATES, et al., :
                        Defendants. :
 :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Maria Lettman asserted claims against the United States, the United States Department of Veteran Affairs, Dr. Teresa Aquino, Drs. John and Jane Doe, and a John Roe police officer defendant.  In April 2013, the claims against Dr. Aquino were settled.  On May 31, 2013, Defendants United States Government and United States Department of Veteran Affairs moved for partial summary judgment on Plaintiff's medical malpractice claims arising from events that took place on April 7, 2010, leaving at issue the events of September 8, 2010.  In Plaintiff's Opposition and in a June 18, 2013, communication to defense counsel, Plaintiff agreed that all of her claims against the Department of Veterans Affairs and the remaining individual defendants should be dismissed.  Accordingly, the Court dismisses those claims and defendants, and denies Defendants' motion as to those claims and defendants as moot.

      Plaintiff continues to assert her common law tort claims against the United States under the Federal Tort Claims Act for the conduct of Dr. Silaja Yitta, who was a resident physician employed at the Veterans Administration hospital.  For the reasons stated below, the United States' motion for partial summary judgment as to the malpractice claims arising from the events of April 7, 2010, is denied.

I. **Facts**

A. **Timeline of Events**

On March 31, 2010, Plaintiff had a pancreatic mass removed and later developed an infection. On April 7, 2010, she underwent a radiology procedure to facilitate access for intravenous antibiotic therapy in which a peripherally inserted central catheter ("PICC line") was inserted into Plaintiff's left brachial vein, with the help of a guidewire. The procedure was performed by either Dr. Teresa Aquino, the attending physician and an independent contractor with the Veterans Affairs Hospital, or Dr. Yitta, who was then a resident physician acting under the direction of Dr. Aquino. Neither Dr. Yitta nor Dr. Aquino can recall the events or their respective roles, nor do records indicate who performed the procedures. Plaintiff testified that Dr. Yitta performed the procedure. Dr. Yitta, a third-year resident with two weeks of interventional radiology training at the time of the procedure, testified that it was her custom and practice to follow the directions of the attending physician during any procedure, and not to exercise any independent medical judgment. Dr. Aquino testified that it was her custom and practice to supervise a resident at all times the resident performs a procedure such as the insertion of a PICC line, and that she would have supervised Dr. Yitta's actions.

On April 14, 2010, the PICC line was removed, and Plaintiff was discharged from the hospital. On September 7, 2010, when Plaintiff returned to the hospital complaining of chest pain, a foreign body – a nine inch piece of a guidewire used in PICC line procedures – was discovered inside Plaintiff's right pulmonary artery. The events of September 8, 2010 are not at issue on this motion. On November 19, 2010, Plaintiff had the PICC line removed at Stony Brook Hospital.

**B. Expert Testimony**

On March 13, 2013, Plaintiff's expert, Dr. Thomas Sos submitted an expert medical report that stated:

> Upon removal of the guide wire additional imaging studies should be taken to confirm and document the final placement of the tip of the PICC line and that the entire guide wire has been successfully removed. The removed guide wire should also be examined to confirm that it is not damaged and that the entire wire was successfully removed.
>
> Based on my review of the above medical records, it is my conclusion and opinion that Drs. Theresa Aquino, MD (Attending Radiologist) and Dr. Yitta (Resident Radiologist) failed to follow the standards of care in the insertion, placement and follow up of the PICC in Maria Lettman and to timely diagnose and treat the resulting broken and retained foreign body wire fragment which migrated through her heart into her pulmonary artery, and that such failure to diagnose and treat the broken and retained wire fragment was a failure to use such care as a reasonably prudent person and careful healthcare provider would have used under similar circumstances.

At his deposition on April 4, 2013, Dr. Sos testified that the combination of the wire breaking and not being detected during and immediately after the procedure was a departure from the standard of care. He also opined that leaving a piece of the guidewire in the patient was not necessarily the only departure from the standard of care, but that he could not identify further departures without depositions and learning more about what had happened during the procedure.

In support of Plaintiff's opposition to summary judgment, Plaintiff submitted a June 7, 2013, declaration of Dr. Sos opining that Dr. Yitta had deviated significantly from the standard of care in the following ways:

> Dr. Yitta should have known based on her education, training and experience as to what the standard of care and procedures were relative to the insertion of a Peripherally Inserted Central Catheter. She should know that radiographs should be taken upon completion to confirm the positioning of the "picc line" and that all equipment used has been removed. . . .

3

> . . . [I]n her procedures, her failure to advise Dr. Aquino as to the conditions as they arose during the procedure, failure to advise Dr. Aquino of the consequences of her treatment of the patient, Maria Lettman, when she knew or should have known about the difficulty removing the guide wire, her failure to have radiographic [studies] preformed to confirm placement of the picc line and of the failure to read the radiographs and failure to preserve the radiographs.

Defendant's expert Dr. Roman Nowygrod opined in his May 31st, 2013, declaration that:

> . . . [A] resident who is either assisting with or performing this type of procedure is under the supervision of an attending physician at all times, and it is the attending physician's responsibility to instruct and supervise the resident on all aspects of the procedure, in part because a resident may not have known that, at the conclusion of the procedure, guidewires are typically examined or radiological images [are] taken in order to confirm the placement of the picc line and removal of the guidewire.

## II. Legal Standard

Summary judgment is appropriate only where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.,* 517 F.3d 76, 87 (2d Cir. 2008). A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 178–79 (2d Cir. 2008). Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The non-moving party may not rely on "conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). It cannot rely on mere denials or unsupported alternative explanations of its conduct. *See S.E.C. v. Grotto,* No. 05 Civ.

5880, 2006 WL 3025878, at *7 (S.D.N.Y. Oct. 24, 2006).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The FTCA makes the United States liable for certain tort claims, including medical malpractice, committed by federal employees as determined by state law. *Taylor v. United States*, 121 F.3d 86, 89 (2d Cir.1997); *see also* 28 U.S.C. § 1346.  "To establish a claim for medical malpractice under New York law, a plaintiff must prove (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir. 1994)).

**III. Discussion**

At issue is Plaintiff's medical malpractice claim against the United States based on an alleged breach of the duty of care by Dr. Yitta, a third-year resident at the time of the procedure.[1] A resident physician "who is supervised by a doctor during a medical procedure, and who does not exercise any independent medical judgment" will not be liable for malpractice "unless the resident or fellow knows that the supervising doctor's orders are so clearly contraindicated by normal practice that ordinary prudence requires inquiry into the correctness of the orders, or the resident or fellow commits an independent act that constitutes a departure from accepted medical practice." *Poter v. Adams*, 961 N.Y.S.2d 556, 558-59 (2013).  "[I]n the ordinary situation hospital personnel are obligated to carry out the instructions of a privately retained attending physician, and have a right to do so without any apprehension that liability will thereby follow. *Christopher v. St. Vincent's Hosp. & Med. Ctr.*, 504 N.Y.S.2d 102, 105 (1986).  However, "it is difficult to believe that hospital personnel who know, or should know, that the course of

---

[1] The parties agree that any liability of the United States based on the actions of Dr. Aquino was resolved as part of the settlement with Dr. Aquino individually and is no longer a part of the case.

treatment prescribed is clearly contraindicated by accepted medical practice, may appropriately carry out the clearly contraindicated course of treatment without taking any action . . . even if that action consists simply of informing the attending physician of their concerns." *Id.*

Plaintiff does not dispute Defendant's claim that Dr. Yitta did not use independent medical judgment or commit an independent act, whether or not she performed the procedure as Plaintiff asserts. Thus, the remaining issue is whether Dr. Aquino's orders as a supervisor were so clearly contraindicated by normal practice that ordinary prudence required Dr. Yitta to inquire into the correctness of those orders. *Poter*, 961 N.Y.S.2d at 559. Defendant argued that Plaintiff failed to raise a triable issue of fact that Dr. Aquinos's actions were so clearly contraindicated that Dr. Yitta violated the standard of care in failing to intervene.

Dr. Sos's testimony, taken as a whole, creates a triable issue of fact as to whether Dr. Yitta should have recognized that it was clearly contraindicated by medical practice not to take steps to determine that the guidewire had been completely removed. Dr. Sos stated that:

> Dr. Yitta should have known based on her education, training and experience as to what the standard of care and procedures were relative to the insertion of a Peripherally Inserted Central Catheter. She should know that radiographs should be taken upon completion to confirm the positioning of the "picc line" and that all equipment used has been removed.

He further stated that:

> Upon conclusion of the procedure, the physician is to examine the guide wire as to its condition as well as determine that the entire wire has been removed. Once the wire has been removed, an x-ray is done to observe the placement of the picc line and to confirm that all of the guide wire has been removed.

Finally, he testified that Dr. Yitta had breached the standard of care in:

> her procedures, her… failure to advise Dr. Aquino of the consequences of her treatment of the patient, Maria Lettman, when she knew or should have known about the difficulty removing the guide wire, her failure to have radiographic [studies] preformed to confirm placement of the picc line and of the failure to read the radiographs and failure to preserve the radiographs.

Read in a light most favorable to the non-moving party, Dr. Sos's testimony raises a triable issue of fact as to whether Dr. Yitta should have informed, or should have known to inform, Dr. Aquino of concerns that, upon completion of the PICC line insertion, insufficient action had been taken to confirm that the guidewire had been completely removed, in clear contravention of established medical practice.  While Dr. Sos did not couch his testimony in the precise "clearly contraindicated" language, he raised a factual question as to whether Dr. Aquino's actions were sufficiently contraindicated that Dr. Yitta should have taken some action. *See St. Vincent's Hosp. & Med. Ctr.*, 504 N.Y.S.2d at 105 (1986) (expert's affidavit was "clearly sufficient to present a factual issue as to whether aspects of the [treatment] constituted malpractice.  Although it is less certain that the treatment pursued was "clearly contraindicated by normal practice, and indeed the affidavit does not speak in such terms," the affidavit was sufficient to raise a factual issue as to the hospital's liability for treatment administered at the direction of the attending physician); *Somoza v. St. Vincent's Hosp. & Med. Ctr. of New York*, 596 N.Y.S.2d 789, 792 (1993) (expert's affidavit was sufficient to create a question of fact, even though not couched in precise terms of "clearly contradindicated").

Defendant argues that Dr. Sos' declaration should be disallowed because it contradicts his earlier expert report and deposition, and is therefore excludable under the "sham issue of fact" doctrine.  "The 'sham issue of fact' doctrine . . . prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony." *In re Fosamax Products Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013).  The doctrine typically is applied "where a party submits an affidavit that contradicts the party's own prior statements," and "when a party attempts to use evidence from an expert witness to defeat summary judgment." *Id.*  A sham issue of fact exists only when "the contradictions in an expert witness's testimony are inescapable and unequivocal in nature." *Id.*; *see also Rivera v. Rochester*

7

*Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 696 (2d Cir. 2012) (concluding that summary judgment was inappropriate because the inconsistencies in the plaintiff's testimony were not "real, unequivocal, and inescapable contradiction[s]").  A court should not disregard later testimony for being "ambiguous, confusing, or . . . incomplete," so long as "there is a plausible explanation for discrepancies in a party's testimony." *Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 106 (2d Cir. 2011) (quoting *Jeffreys v. City of New York,* 426 F.3d 549, 555 n. 2 (2d Cir. 2005)).

The inconsistencies here are not "unequivocal contradictions."  In his expert report, Dr. Sos opined that "[u]pon removal of the guide wire additional imaging studies should be taken to confirm . . . that the entire guide wire has been successfully removed," and that Drs. Aquino and Yitta had failed to follow the standards of care by failing to "diagnose and treat the broken and retained wire fragment . . . ."  At his deposition, he also stated that "the combination of the wire breaking and not being detected during and in the immediate follow-up period does speak of departure from standards of care," and that the breaking of the wire is not "exclusively the only departure that [he has] found."  In his June 7, 2013 declaration, Dr. Sos opined that "[t]here was a significant deviation from [the] standard of care by Dr. Yitta in her procedures."  He further criticized Dr. Yitta's failure to inform Dr. Aquino of the "conditions . . . during the procedure . . . ; consequences of her treatment of [plaintiff]; . . . failure to have radiographic [studies] performed . . . ; and failure to read [and] . . . preserve the radiographs."  He also stated that Dr. Yitta "should know that radiographs should be taken upon completion to confirm the positioning of the 'picc line' and that all equipment used has been removed."

While his most recent testimony might be different, it does not contradict his prior testimony.  *See Rivera*, 702 F.3d at 694-6 (finding "no real, unequivocal, and inescapable contradiction of the sort contemplated [by the doctrine]," where mechanic filed a complaint

based on hostile work environment stemming from "personal conflict" but later testified that defendant "harassed him based on his national origin"); *cf. In re Fosamax*, 707 F.3d at 194-95 (finding that expert testimony "inescapably and unequivocally contradicted" earlier testimony where doctor first testified not knowing that patient was on a certain drug and later testified that he did know).

Because there is no clear contradiction, the Court credits Dr. Sos' June 7, 2013 declaration. Trial is the proper arena in which to consider the credibility of the parties' expert witnesses, and the fact finder can make inferences regarding the timing of Dr. Sos's testimony.

### III. Conclusion

For the reasons stated above, summary judgment is GRANTED as to the individual Defendants and the Department of Veterans Affairs. Summary judgment is DENIED as to Plaintiff's malpractice claim against the United States.

SO ORDERED.

Dated: August 29, 2013
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE